UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON O. HARPER,<br>    Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>    Defendant. | Case No. 17-cv-04296-DMR<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 17, 21 |

Plaintiff Jason O. Harper moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Harper not disabled and therefore denied his application for benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. The Commissioner cross-moves to affirm. For the reasons stated below, the court denies Harper's motion and grants the Commissioner's motion.

**I.    PROCEDURAL HISTORY**

Harper filed an application for Social Security Disability Insurance (SSDI) benefits on February 27, 2014, which was initially denied on May 2, 2014 and again on reconsideration on August 6, 2014. Administrative Record ("A.R.") 227-241, 138-141, 149-151. On October 15, 2014, Harper filed a request for a hearing before an Administrative Law Judge (ALJ). A.R. 157-158. ALJ Wynne O'Brien-Persons held a hearing on October 8, 2015, at which Harper was represented by Dan McCaskell, Ph.D., a non-attorney representative. A.R. 35-61, 196.

After the hearing, the ALJ issued a decision finding Harper not disabled. A.R. 7-28. The ALJ determined that Harper has the following severe impairments: hepatic encephalopathy; hepatitis C; cirrhosis of the liver; cervical degenerative disk disease with right radiculitis; lumbar degenerative disk disease with left radiculitis; panic without agoraphobia; bipolar disorder; and anxiety. A.R. 13. She found that Harper retains the following residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b); except that he is limited to occasional postural maneuvers; is limited to 1- and 2-step tasks, and low stress work, defined as involving only occasional changes in the work setting; is precluded from fast-paced (production-type) work; and is limited to occasional interaction with the public, co-workers, and supervisors, that is generally brief and superficial in nature; finally, the claimant must be permitted to walk for approximately 10 minutes for every hour during the 8-hour workday while still performing job duties.

A.R. 16.

A vocational expert (VE) testified that an individual with such an RFC could not perform Harper's past relevant work, but could perform the following jobs that exist in the economy: sandwich board carrier (DOT 299.687-014) and office helper (DOT 239.567-010). A.R. 53-56. The VE testified that nationally there are 76,800 sandwich-board carrier jobs and 71,700 office helper jobs. A.R. 54-55, 56. Relying on the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Harper] can perform" and determined that he is not disabled. A.R. 26-28.

The Appeals Council denied Harper's request for review on May 26, 2017. A.R. 1-6. The ALJ's decision therefore became the Commissioner's final decision. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Harper then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II. LEGAL STANDARDS

### A. The Five-Step Sequential Evaluation Process

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

1. At the first step, the ALJ considers the claimant's work activity, if any. If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2. At the second step, the ALJ considers the medical severity of the claimant's impairment(s). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled.

3. At the third step, the ALJ also considers the medical severity of the claimant's impairment(s). If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled.

4. At the fourth step, the ALJ considers an assessment of the claimant's residual functional capacity ("RFC") and the claimant's past relevant work. If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled.

5. At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.

20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis. However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

**B. Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the

Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## III. DISCUSSION

Harper argues that the ALJ's determination at step five that Harper can perform alternate work that exists in significant numbers in the national economy is not supported by substantial evidence.[2] As noted, the VE testified that an individual with Harper's RFC could perform the jobs of sandwich-board carrier and office helper. Harper argues that the requirements of those occupations, as described in the Dictionary of Occupational Titles ("DOT"), conflict with the ALJ's determination of Harper's RFC. He also argues that the VE's job numbers analysis was flawed.

The Commissioner cross-moves to affirm, arguing that the ALJ's decision is supported by substantial evidence and is free of legal error.

---

[2] Harper does not dispute the ALJ's analysis of the medical evidence or assessment of Harper's RFC. Mot. 5.

4

### A. Step Five Analysis

At the fifth step of the sequential evaluation, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work. If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99. Should the ALJ decide that the claimant is not disabled, "the [SSA] is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [his RFC] and vocational factors." 20 C.F.R. § 416.960(c)(2).

Social Security Ruling ("SSR") 00-4p governs the use of occupational evidence.[3] At step five of the sequential evaluation, ALJs rely on the DOT, including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), and testimony from vocational experts in making disability determinations. SSR 00-4p, 2000 WL 1898704 at *2 (S.S.A. Dec. 4, 2000). The DOT is a reference guide in the form of a job catalog that contains standardized occupational information about each occupation. An ALJ is to "rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy." *Id*. An ALJ may also call upon a VE to provide occupational evidence through testimony at a disability benefits hearing. *Id.* As part of a disability determination, an ALJ must address any conflicts between the VE's testimony and information contained in the DOT. *Id*. at *1. The ALJ has an "affirmative responsibility to ask about any possible conflict between [the VE's testimony about the requirements of a job] and information provided in the DOT." *Id.* at *4.

The DOT provides specific information about each listed occupation, "including the necessary General Education Development ('GED') levels; that is, 'aspects of education (formal

---

[3] SSRs "are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Massachi v. Astrue*, 486 F.3d 1149, 1152, n.6 (9th Cir. 2006) (citations omitted). In *Massachi*, the Ninth Circuit held that an ALJ must comply with SSR 00-4p before relying on the testimony of a vocational expert. *Id.* at 1150.

1   and informal) . . . required of the worker for satisfactory job performance.'" *Zavalin v. Colvin*,
2   778 F.3d 842, 846 (9th Cir. 2015) (citation omitted). GED levels include "the reasoning ability
3   required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to
4   Level 6 (which requires the most)." *Id.*

### B.   Sandwich-Board Carrier

Harper makes two arguments in support of his claim that the ALJ erred with respect to the sandwich-board carrier job. First, he argues that although the ALJ's RFC limited him to occasional interaction with the public, coworkers, and supervisors, the sandwich-board carrier position requires an individual to "[w]ear[] sign boards and walk[] in public to advertise merchandise, services, or belief." *Id.* According to Harper, the VE failed to address the conflict between Harper's limitation to occasional interaction with others and the "narrative description of the job function," including addressing "whether advertising merchandise, services, or belief would require some minimal degree of interaction that would occur more than occasionally since that appears to be the essential, integral, and expected job functions [sic]." Mot. 11.

In response, the Commissioner asserts that the ALJ need only resolve conflicts that are "obvious or apparent," and that the DOT's description of the position does not suggest that it would involve more than "occasional" interaction with others, which the VE defined as occurring more than one-third of the workday (*see* A.R. 58). The DOT description of the sandwich-board carrier occupation is as follows:

> Wears sign boards and walks in public to advertise merchandise, services, or belief. May distribute handbills to passers-by [ADVERTISING-MATERIAL DISTRIBUTOR (any industry)]. May wear costume to attract attention [IMPERSONATOR, CHARACTER (any industry)]. May work for labor organization and be designated Picket, Labor Union (nonprofit org.).

299.687-014 SANDWICH-BOARD CARRIER, DICOT 299.687-014, 1991 WL 672646. Notably, the only other portion of the description that references interaction with others is the "not significant" rating for the task "People: 8 – Taking Instructions—Helping." *See id.*

In *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016), the Ninth Circuit held that "[f]or a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the

6

[DOT's] listing of job requirements that are essential, integral, or expected." There is no indication that interacting with others is an "essential, integral, or expected" part of the sandwich-carrier job, and Harper identifies no "obvious or apparent" conflict between his RFC and the job requirements. Harper does not address this argument on reply and appears to concede it. The court concludes that the ALJ did not err with respect to a purported conflict between Harper's RFC and the DOT's description of the sandwich-board carrier occupation.

Next, Harper argues that the VE's testimony about the number of sandwich-board carrier jobs in the national economy was flawed. The VE testified that there are 76,800 sandwich-board carrier jobs in the national economy. A.R. 54-55. According to Harper, the sandwich-board carrier job is only one of multiple occupations that fall within the occupational group "Demonstrators and Product Promoters," and the 76,800 jobs figure cited by the VE actually represents the total number of jobs for the occupational group as a whole, not the sandwich-board carrier job. Mot. 11. Therefore, Harper argues, the ALJ erred in relying on the VE's "fundamentally flawed" testimony. *Id*. In support, Harper cites printouts from O*NET OnLine, https://www.onetonline.org, a website sponsored by the United States Department of Labor, which he states show that the sandwich-board carrier occupation is one of nine separate DOT codes within the demonstrators and product promoters occupational group. He also cites what he describes as a May 2013 Bureau of Labor Statistics ("BLS") spreadsheet listing the "aggregate incidence of jobs in the national economy" for the demonstrators and product promoters occupational group. Rohlfing Decl., May 24, 2018, ¶¶ 2-4, Exs. 1-3. According to Harper, this document shows that as of May 2013, there were 75,790 jobs in the entire occupational group. *Id*. at ¶ 4.

The Commissioner responds that Harper waived any objection to the VE's job numbers testimony by failing to raise the issue at the hearing, citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2018). In *Shaibi*, the Ninth Circuit held that "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel." Here, Harper does not dispute that he did not raise this issue at any point during the

7

administrative proceedings. Although he was not represented by an attorney during the administrative proceedings, Harper was represented by a non-attorney representative, Dr. McCaskell, and the Commissioner makes a number of arguments that *Shaibi* "can and should apply equally to non-attorney representatives." Opp'n 4-5.

The court need not resolve the issue of whether *Shaibi*'s ruling applies where a claimant was represented by a non-attorney representative during administrative proceedings, because even if Harper did not waive the issue, his argument that the ALJ erred in relying on the VE's testimony is not persuasive. A VE's testimony constitutes substantial evidence supporting an ALJ's decision, and a VE's "recognized expertise provides the necessary foundation for his or her testimony." *Bayliss v. Barnhart,* 427 F.3d 1211, 1217-18 (9th Cir. 2005). Harper's argument is that the VE improperly used an aggregated occupational group job number and used it to describe the single sandwich-board carrier position. However, he offers no evidence that the VE did so, pointing only to the fact that the May 2013 BLS job number for the demonstrators and product promoters occupational group (75,790) is similar to the number of jobs the VE testified exist in the national economy for the sandwich-board carrier occupation (76,800). Without more, Harper's argument is speculation. At most, he offers an alternative opinion regarding the job numbers, but Harper is not a vocational expert and is not qualified to assess BLS statistics or other job statistics, and he provides no expert opinion interpreting the data he offers. *See, e.g., Munroe v. Colvin*, No. 13-cv-03897-MEJ, 2014 WL 6660369, at *5, 9-10 (N.D. Cal. Nov. 24, 2014) (rejecting challenge to VE's testimony regarding number of jobs existing nationally, noting that "even assuming that there is any relevance to Plaintiff's conclusions, she is not the vocational expert, and there is no indication that she is qualified to assess such data. Further, Plaintiff has presented no authority establishing that the Court should accept her version of job availability over that of the unchallenged testimony of the vocational expert.").

The cases Harper rely on are distinguishable. *See* Reply 8. In *Haile v. Commissioner Social Security Administration*, No. 3:14-cv-01996-HZ, 2016 WL 614428, at *7 (D. Or. Feb. 14, 2016), the court held that the VE's job numbers testimony did not constitute substantial evidence upon which the ALJ could rely where the VE "candidly admitted" on cross examination "that he

did not know whether the data he relied upon was an accurate portrayal of the number of jobs available that [the plaintiff] could perform." In *Darling v. Colvin*, No. EDCV 13-266 JC, 2013 WL 4768038, at *4 (C.D. Cal. Sept. 4, 2013), the VE testified on cross examination that he used a software program called "Job Browser Pro" as "the basis of [his employment] numbers." When the plaintiff's attorney attempted to question him about whether "his job number estimates represented totals for the particular 'DOT number' as opposed to 'the entire code,'" the ALJ interrupted the line of questioning. *Id*. Following the hearing, the attorney submitted to the ALJ reports from the Job Browser Pro software program that suggested that the numbers the VE provided at the hearing "erroneously pertained to entire Occupational Employment Survey . . . statistical groups rather than the individual representative occupations encompassed therein." *Id*. at *5. The court held that the VE's testimony could not serve as substantial evidence supporting the ALJ's determination at step five. *Id*. at *6.

In contrast with *Haile* and *Darling*, Harper offers no evidence to support his claim that the VE's testimony was inaccurate or unreliable. His speculation about the existence of an alternative number of available jobs does not warrant remand. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). The court concludes that substantial evidence supported the ALJ's step five determination as to the occupation of sandwich-board helper.

### C. Office Helper

The ALJ also relied on the VE's testimony that an individual with Harper's RFC is capable of performing the job of office helper, which requires a GED reasoning level of two. DOT 239.567-010, Office Helper, 1991 WL 672232. GED level two requires that an individual "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id*.

Harper argues that the ALJ's determination that his RFC limits him to jobs involving "1 to 2-step tasks" precludes him from performing a job that is described in the DOT as requiring a

reasoning level of two, citing *Rounds v. Commissioner Social Security Administration*, 807 F.3d 996, 1003 (9th Cir. 2015). *See* A.R. 16. In *Rounds*, the ALJ determined that the plaintiff's RFC limited her to performing work involving one- and two-step tasks and concluded that she was not disabled because she could perform three jobs that exist in significant numbers in the national and local economy. *Id*. at 1001. Each of the three jobs the VE identified required the ability to perform GED level two reasoning. *Id*. at 1002. The Ninth Circuit held that the ALJ erred in failing to resolve the "apparent conflict" between the plaintiff's RFC limiting her to one- and two-step instruction work and "the demands of Level Two reasoning, which requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'" *Id*. at 1003. The court noted the "close" and "obvious" similarity between a limitation to one- and two-step instruction work and Level One reasoning, which "requires a person to apply 'commonsense understanding to carry out simple one- or two-step instructions.'" *Id*. Further, the court held that the ALJ's failure to resolve the conflict was not harmless, explaining that "the ALJ did not merely restrict [the plaintiff] to 'simple' or 'repetitive' tasks," but instead "expressly limited her to 'one to two step tasks," without providing any explanation "as to why the VE or the ALJ may have believed that [the plaintiff's] specific limitation to 'one to two step tasks' should not be taken at face value." *Id*.

Here, the ALJ limited Harper to work involving "1 to 2-step tasks," but failed to address the conflict between his RFC and the demands of the office helper job. At the hearing, the ALJ asked the VE if his testimony was "in accordance with the DOT, it's [sic] companion publications and [his] professional experience." A.R. 60. The VE responded "yes," but the ALJ never asked the VE to explain the apparent inconsistency between the Level Two reasoning office helper job and Harper's RFC.

While acknowledging *Rounds*, the Commissioner argues that "the record as a whole indicates that Plaintiff could perform work as an office helper," describing evidence that she claims shows that Harper has no "notable cognitive or adaptive restrictions" that would preclude him from performing Level Two reasoning jobs. Opp'n 7-8. However, the ALJ herself made no such finding in the opinion. "Long-standing principles of administrative law require [this court] to

10

1 review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not
2 post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*
3 *v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citation omitted). "A
4 clear statement of the agency's reasoning is necessary because [the court] can affirm the agency's
5 decision to deny benefits only on the grounds invoked by the agency." *Brown-Hunter v. Colvin*,
6 806 F.3d 487, 492 (9th Cir. 2015).

The court concludes that the ALJ's finding that Harper could work as an office helper is not supported by substantial evidence. However, as discussed above, substantial evidence supported the ALJ's determination that Harper could perform the sandwich-board carrier occupation. Accordingly, the ALJ's error with respect to the office helper occupation is harmless as it is "inconsequential to the ultimate nondisability determination," *Tommasetti*, 533 F.3d at 1038 (quotation omitted), since an ALJ need only identify one occupation that a claimant must be able to perform. *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in *one or more occupations*) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." (emphasis added)).

## IV.  CONCLUSION

For the foregoing reasons, Harper's motion for summary judgment is denied. The Commissioner's motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated: December 14, 2018



Donna M. Ryu
United States Magistrate Judge